UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**MEZAL AL-JIBOURY,**
Debtor

Chapter 7
Case No. 05-30057-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~

MEMORANDUM

I. INTRODUCTION

The matter before the Court is the Motion for Contempt pursuant to which Mezal Al-Jiboury (the "Debtor") seeks a determination that the Massachusetts Department of Transitional Assistance (the "DTA"), which administers the Commonwealth's food stamps program, violated the discharge injunction imposed by 11 U.S.C. § 524 by forwarding to him, post-discharge, a notice stating that it would begin recoupment of an overpayment of food stamp benefits. The DTA filed an Opposition to the Debtor's Motion, observing that it sent the notice in error and had advised Debtor's counsel that it has suspended all efforts to recoup the overpayment.

The issue presented is whether the Debtor has sustained his burden of establishing a violation of the discharge injunction. The material facts necessary to determine the issue of liability are undisputed. The DTA submitted the Declaration of its Assistant General

1

Counsel, Daniel LePage, in which Attorney LePage set forth pertinent facts, and both parties submitted a number of documents, including the transcript of a hearing before Judge Somma in the case of <u>Byrd-Enoma v. Wagner</u>, No. 05-1337-JS (Bankr. D. Mass., June 29, 2005). Neither party requested an evidentiary hearing with respect to the issue before the Court, although, if the Court were to find the DTA in contempt, an evidentiary hearing would be necessary to determine damages. For the reasons set forth below, however, the Court finds that the Debtor has failed to sustain his evidentiary burden. Accordingly, the Court shall enter an order denying the Debtor's Motion.

## II. FACTS

The Debtor filed a voluntary Chapter 7 petition on November 4, 2005. He did not list the DTA as a creditor, and, as a result, it did not receive notice of the bankruptcy filing or notice of the meeting of creditors, which was held on November 29, 2006.

Approximately one month after the commencement of the Debtor's case, on December 7, 2005, the DTA notified the Debtor that, as a result of an error on its part, it overpaid his food stamp benefits by a total of $294 prior to the commencement of the bankruptcy case. According to Attorney LePage, the DTA was unaware that the Debtor had filed a bankruptcy petition at the time it mailed him the notification.

The Debtor appealed the DTA's determination of overpayment on December 23, 2005, and the DTA scheduled a hearing with respect to the appeal. On January 10, 2006, the Debtor attended a hearing conducted by the DTA. He was represented by an attorney who did not raise an issue that the hearing was being convened and conducted in violation

of the automatic stay.[1] On January 12, 2006, the Debtor's bankruptcy counsel wrote to Attorney LePage to request that the DTA cease all attempts to recover the $294 overpayment. After receiving the letter from Debtor's counsel, Attorney LePage advised him that "the DTA would suspend the recoupment of the overpayment." Attorney LePage and Debtor's counsel, however, did not agree on whether the overpayment would be dischargeable in bankruptcy.

On February 6, 2006, the Debtor received his discharge. According to Attorney LePage, the DTA did not receive any notice from the Bankruptcy Court of the discharge order. Contemporaneously, on February 9, 2006, the DTA hearing officer issued a decision with respect to the Debtor's appeal. According to the written decision prepared by Colin M. Connor, the DTA hearing officer,

> The appellant was represented by an attorney. His attorney did not dispute the amount of the overpayment, or that it had occurred. She argued that requiring the appellant to repay the overpayment would cause him undue hardship.
>
> The appellant introduced a copy of a bankruptcy proceeding memorandum showing that his Chapter 7 petition had been approved .. and other budget information. . . .

The hearing officer concluded that under 106 CMR 367.495, "overpayments of Food Stamp benefits must be repaid whether caused by household error or Department error."

---

[1] The Debtor has not requested a determination that the hearing violated the automatic stay, and the Court makes no such determination. The Debtor's appeal, however, precipitated the DTA hearing, and the conduct of his attorney in failing to raise an issues as to a possible stay violation arguably estops the Debtor from contending that a stay violation occurred.

3

Despite having been advised of the Debtor's pending bankruptcy case and agreeing to suspend recoupment efforts, on March 15, 2005, the DTA mistakenly wrote to the Debtor to inform him that his food stamp benefits would be reduced for a period of time sufficient for the DTA to recover the overpayment. According to Daniel LePage, "[a]fter Attorney Oney brought the notice to my attention, I confirmed that DTA would suspend any efforts to recoup the overpayment."

## III. POSITIONS OF THE PARTIES

### A. The Debtor

The Debtor argues that the DTA's continued attempts to collect the overpayment should be punished as a contempt. Relying upon Judge Somma's ruling in Byrd-Enoma v. Wagner, No. 05-1337-RS (Bankr. D. Mass, June 29, 2005), the Debtor states that "[b]y the time this case was filed, DTA was already aware that, in the absence of fraud, pre-petition food stamp overpayments are discharged in a bankruptcy case. In Byrd-Enoma, Judge Somma, in a bench ruling, determined that DTA's alleged right to discontinue food stamp benefits under its governing regulations due to a prior overpayment is a right to payment and, therefore, a "claim" subject to discharge under § 727(b) of the Bankruptcy Code.

The Debtor admits that take he did not take steps to insure that DTA received a copy of the discharge order because his bankruptcy counsel was unaware until January 12, 2006 that the DTA asserted a claim against him. He adds:

> By January 18, 2006, when bankruptcy counsel discussed the overpayment issue with Mr. LePage, the discharge order was imminent and Mr. LePage gave assurances that counsel interpreted as meaning that DTA would honor the discharge order when it entered. Counsel's January 12, 2006 letter to Mr.

4

LePage specifically mentioned "any discharge that may enter". The Debtor says that this mention of discharge, coupled with DTA's institutional knowledge stemming from the <u>Byrd-Enoma</u> case, created a positive duty for DTA to determine whether and when a discharge might have entered before resuming its collection actions against the Debtor. DTA should therefore be found to have had constructive knowledge of the discharge injunction.

The Debtor argues that <u>Ellis v. Dunn (In re Dunn)</u>, 324 B.R. 175 (D. Mas. 2005), should not control this case because the legal principles applicable to violations of the discharge injunction changed after the discharge entered in the <u>Dunn</u> case. He urges the Court to employ the standard of proof used by the Court in <u>Cherry v. Arendall (In re Cherry)</u>, 247 B.R. 176 (Bankr. E.D. Va. 2000), a case cited by the United States Court of Appeals for the First Circuit in <u>Bessette v. Avco Fin. Servs., Inc.</u>, 230 F.3d 439 (1st Cir. 2000), namely the same standard used for determining whether a stay violation is willful under 11 U.S.C. § 362. Thus, he argues that the Court should not require proof of contempt by clear and convincing evidence. In sum, the Debtor argues that the DTA should have known of the discharge order by March 15, 2006 because of his counsel's letter of January 12, 2006 and Judge Somma's decision in <u>Byrd-Enoma</u>.

The Debtor also maintains that the DTA may not justify its actions by relying upon the equitable doctrine of recoupment. He states that the food stamp program constitutes an entitlement, not a contractual arrangement, and the nature of the payments in his case are different that those considered by the First Circuit in <u>Holyoke Nursing Home, Inc. v. Health Care Financing Administration</u>, 372 F.3d 1 (1st Cir. 2004). According to the Debtor, the Health Care Financing Administration made estimated payments to the nursing home, subject to annual adjustment, whereas he received food stamps that he used to buy food

5

for himself and his dependents. As an alternative argument, he maintains that the DTA is not entitled to relief under a contract theory and should bear the risk if its unilateral mistake in overpaying benefits.

B. The Department of Transitional Assistance

The DTA maintains that it should not be held in contempt because there is no clear and convincing evidence that it received actual notice of a clear and unambiguous order addressed to it. Relying on United States v. Saccoccia, 433 F.3d 19, 27 (1st Cir. 2005), Ellis v. Dunn (In re Dunn), 324 B.R. 175, 179 (D. Mass. 2005), and Parker v. Boston Univ. (In re Parker), 334 B.R. 529, 538 (Bankr. D. Mass. 2005), it argues that the Debtor must prove, with clear and convincing evidence that it had notice that it was within the ambit of the discharge order; that the order was clear and unambiguous, that it had the ability to comply with the discharge order, and that the order was violated. It maintains that constructive knowledge of the discharge order is insufficient for a finding of contempt, adding that it did not know that the discharge order actually existed or how the discharge specifically applied to it in view of its recoupment rights.

The DTA also rejects the Debtor's reliance on Judge Somma's bench ruling in Byrd-Enoma, noting that in that case the Debtor sought to enjoin it from conducting an administrative disqualification hearing while the automatic stay was in effect. The DTA stated that it had not addressed the propriety of recoupment at the time of the hearing before Judge Somma because it had not yet found an overpayment to have existed. Rather, according to the DTA, in Byrd-Enoma the regulatory sanction for the debtor's alleged

6

violation was prospective ineligibility for food stamps.

The DTA also rejects the Debtor's attempt to distinguish the recoupment permitted in Holyoke Nursing Home, Inc. It maintains that it is required by regulation to attempt to recover overpayments caused by agency error. See 106 CMR 367.495(E)(2). It asserts that "[a]t the very least, it is an open question whether these overpaid benefits could be recouped, as so the preclusive effect of the discharge was uncertain."

Finally, the DTA maintains that the discharge injunction was not actually violated because to date nothing has been withheld from the Debtor's food stamp benefits, and the DTA has no intention of withholding any part of the $294 overpayment in the future.

## IV. DISCUSSION

### A. Applicable Law

#### 1. Violations of the Discharge Injunction

Section 524(a)(2) provides that a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or any act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2). A bankruptcy court is authorized to invoke 11 U.S.C. § 105 to enforce the discharge injunction imposed by § 524 and order damages, including actual damages, attorneys' fees and punitive damages, if warranted. U.S. Rivera Torres (In re Rivera Torres), 432 F.3d 20, 27 (1st Cir. 2005), Bessette v. Avco Fin. Servs., Inc., 230 F.3d 439, 445 (1st Cir. 2000). See also In re Hardy, 97 F.3d 1384, 1389-90 (11th Cir. 1996).

7

There is a divergence of opinion as to the level of proof required to establish a violation of the discharge injunction. Some courts require clear and convincing evidence for a finding of civil contempt, while others adopt the same standard for enforcing the discharge injunction under § 105 as they employ for determining violations of the automatic stay. In Pratt v. General Motors Acceptance Corp. (In re Pratt), 324 B.R. 1, 5 (Bankr. D. Me. 2005), aff'd, 2005 WL 1961341 (D. Me. August 15, 2005), Judge Haines ably discussed the issue. He stated:

> GMAC argues that a finding of civil contempt must rest on clear and convincing evidence. Generally speaking, that proposition is true. AccuSoft Corp. v. Palo, 237 F.3d 31, 47 (1st Cir. 2001); Gemco Latinoamerica, Inc., v. Seiko Time Corp., 61 F.3d 94 (1st Cir. 1995). The Pratts posit that violations of the statutory discharge injunction stand on a different footing. In their view, enforcing the discharge injunction via § 105 is like enforcement of similar Code provisions--where clear and convincing evidence is not required. See, e.g., § 362(h); Fleet Mortgage Group, Inc. v. Kaneb (In re Kaneb), 196 F.3d 265 (1st Cir. 1999) (discussing willful violation of the automatic stay and determining that relief may be obtained if the offending party knew of the stay and intended the action that violated it).
>
> The Pratts' position has much to recommend it, given the statute's clarity, and the essential role discharge plays in the Code's fresh start objective. Bessette recognized that § 524(a) is enforced by way of § 105(a), rather than directly, in proceedings styled "civil contempt." The cases cited by the Bessette court do not discuss burden of proof directly, although, on balance, they adopt the same "willfulness" elements as the First Circuit recognized in Kaneb. Those elements (knowledge of the order, willful action that violates the order) do not fit with a "clear and convincing" burden of proof. See Hardy v. United States (In re Hardy), 97 F.3d 1384, 1389-90 (11th Cir. 1996) (citation for contempt under the court's inherent powers made only upon a showing of "bad faith," whereas liability for contempt of § 524 injunction under § 105 lies if defendant willfully violated § 524); In re Elias, 98 B.R. 332, 337 (N.D. Ill. 1989) ("It is enough if the order violated is specific and definite, and that the offending party has knowledge of it."); but see In re Arnold, 206 B.R. 560, 568 (Bankr. N.D. Ala. 1997) (sanctions for violation of discharge injunction can issue through court's inherent powers on showing of bad faith

8

> or "malevolent intent"); *cf.* In re Rosteck, 899 F.2d 694, 697 (7th Cir. 1990) (affirming award of sanctions without mention of § 105, and holding that creditor waived argument that proof of willfulness was required). Moreover, the First Circuit has expressly recognized that enforcement of the statutory discharge injunction, as compared to enforcing an injunction "individually crafted" by a judge, is a straightforward exercise. Bessette, 230 F.3d at 446 (enforcing the discharge injunction does not call for consideration of the judge's "insights and thought processes" as would be pertinent to enforcing a custom-made injunction).

In re Pratt, 324 B.R. at 5. Upon consideration of the parties' positions which mirror those of the DTA and the Debtor in this case, Judge Haines concluded:

> It would seem that proving a violation of the discharge injunction, actionable by way of a § 105(a) contempt proceeding, should only require proof by a preponderance of the evidence that the offending creditor knew of the bankruptcy discharge and took willful action in violation of the discharge injunction. Section 524(a)'s injunction is as critical to a deserving debtor's fresh start as the Code's automatic stay is to providing immediate relief to the financially distressed debtor. See Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 975 (1st Cir.1997). Its enforcement should be no more burdensome. . . .

Id. (footnote omitted). *See also* Cherry v. Arendall (In re Cherry), 247 B.R. 176, 187 ("The Court agrees with the holding in Hardy that the standard used for determining whether a stay violation was willful pursuant to § 362 may be used to determine whether a violation of the discharge violation was willful. In a civil contempt proceeding, the state of mind with which the contemnor violated a court order is irrelevant and therefore good faith, or the absence of an intent to violate the order, is no defense.").

In Pratt, Judge Haines determined that it was unnecessary to decide the issue which he discussed, although, citing Fed. R. Bankr. P. 4004(g), he observed that "Creditors will seldom be unaware of the discharge injunction or its content." Id. at 5 n.6. He added that

9

the court could also fashion relief suitable to the facts and circumstances of each case. Id.

In contrast to the decision in Pratt, the United States District Court for the District of Massachusetts in Ellis v. Dunn (In re Dunn), 324 B.R. 175 (D. Mass. 2005), crafted a strict standard and directed the bankruptcy court to employ the non-bankruptcy standard for the imposition of civil contempt sanctions because of the circumstances of the case, namely the debtor's failure to list her former attorney as a creditor in her schedules. The district court stated:

> The appellants do not dispute that Ellis and Burdine [the alleged contemnors] had been informed of Dunn's bankruptcy discharge at least by the beginning of the trial in the Westborough District Court. Their argument is that knowledge of the *fact of the discharge* was insufficient under the circumstances to give them sufficient notice of the *scope of the discharge injunction,* and without undisputed proof that they were on notice that the injunction prohibited the Westborough District Court suit, it was error for the bankruptcy judge to find them in contempt of the injunction on Dunn's motion for summary judgment. I agree.
>
> The bankruptcy judge concluded, in substance, that knowledge of the fact of the discharge amounted to a kind of "inquiry notice" that imposed on the appellants the duty to learn the scope of the order and, more particularly, the obligation--enforceable by contempt sanctions--to desist immediately from proceeding with the state court suit unless and until it was determined that the suit could be maintained without violating the injunction. This was error because it is inconsistent with settled principles governing the standards for proving civil contempt.

Ellis v. Dunn, 324 B.R. at 178-79(emphasis in original).

Citing Project B.A.S.I.C. v. Kemp, 947 F.2d 11, 17 (1st Cir. 1991), the District Court then articulated the applicable standard as follows:

> "[T]hose who would suffer penalties for disobedience must be aware not merely of an order's existence, but also of the fact that the order is directed at them. . . . We think it is beyond serious question that, as a necessary

10

prelude to a finding of contempt, the putative contemnor should have reasonably definite advance notice that a court order applies to it.

***

*A court order, then, must not only be specific about what is to be done or avoided, but can only compel action from those who have adequate notice that they are within the order's ambit.* For a party to be held in contempt, it must have violated a clear and unambiguous order that left no reasonable doubt as to what behavior was expected and who was expected to behave in the indicated fashion. In determining specificity, the party enjoined must be able to ascertain from the four corners of the order precisely what acts are forbidden."

Ellis v. Dunn, 324 B.R. at 179(emphasis supplied).   In reaching its decision, the district court cited Renwick v. Bennett (In re Bennett), 298 F.3d 1059, 1069 (9th Cir. 2002);[2] Koehler

---

[2] In Renwick, the court stated:

"The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." F.T.C. v. Affordable Media, 179 F.3d 1228, 1239 (9th Cir.1999) (citation omitted). As discussed by the Eleventh Circuit in Hardy, to justify sanctions, the movant must prove that the creditor (1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction. *See* Hardy, 97 F.3d at 1390 (citing Jove Eng'g, Inc. v. Internal Revenue Service, 92 F.3d 1539, 1555 (11th Cir.1996)).

298 F.3d at 1069. Affordable Media is a non-bankruptcy case, while Hardy is a bankruptcy case. In Hardy, the court utilized the Kaneb formulation discussed by Judge Haines in Pratt. The Eleventh Circuit stated:

This court has stated that "the focus of the court's inquiry in civil contempt proceedings is not on the subjective beliefs or intent of the alleged contemnors in complying with the order, but whether in fact their conduct complied with the order at issue." Howard Johnson Co. v. Khimani, 892 F.2d 1512, 1516 (11th Cir. 1990) (quoted in Jove, 92 F.3d at 1554). In Jove, this court adopted a two-pronged test to determine

11

v. Grant, 213 B.R. 567, 570 (B.A.P. 8th Cir. 1997)("A court cannot issue a contempt order unless a party has violated a specific order of which he or she is aware."); Musslewhite v. O'Quinn (In re Musslewhite), 270 B.R. 72, 79 (Bankr. S.D. Tex. 2000)("A movant in a civil contempt proceeding bears the burden of establishing by clear and convincing evidence: (1) that a court order was in effect, (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order.);[3] and American Chem. Works Co. v. Int'l Nickel, Inc. (In re American Chem. Works Co.), 235 B.R. 216, 220-21 (Bankr. D. R.I. 1999).[4] It concluded the clear and convincing standard applies in the bankruptcy context and, it appeared to reject the view that the standard for determining violations of the automatic stay applies. Nevertheless, the district court recognized the Kaneb standard, stating:

> The bankruptcy judge's grant of summary judgment was premised on the

---

> willfulness in violating the automatic stay provision of § 362. Under this test the court will find the defendant in contempt if it: "(1) knew that the automatic stay was invoked and (2) intended the actions which violated the stay." Jove, 92 F.3d at 1555. This test is likewise applicable to determining willfulness for violations of the discharge injunction of § 524.

Hardy, 97 F.3d at 1390.

[3] The court added that the contemptuous action need not be willful as long as the party alleged to be in contempt actually failed to comply with the court's order.

[4] In this case the corporate debtor sought damages for violation of the automatic stay. The bankruptcy judge discussed the debtor's argument for a civil contempt remedy under § 105 in lieu of damages under § 11 U.S.C. 362(h). The court, relying upon a non-bankruptcy case, Langton v. Johnston, 928 F.2d 1206, 1220 (1st Cir. 1991), stated "'a complainant must prove civil contempt by clear and convincing evidence.'" 235 B.R. at 220-21.

12

conclusion that the appellants' awareness of the discharge gave sufficiently specific content to the statutory discharge injunction that violation of the injunction by prosecution of the civil action was punishable as a contempt. She properly recognized that in cases involving violations of the automatic stay under 11 U.S.C. § 362, a creditor will be found to have willfully violated the stay if it is shown that he had knowledge of the stay and intended the actions which constituted the violation. Fleet Mortgage Group, Inc. v. Kaneb, 196 F.3d 265, 269 (1st Cir. 1999). In such cases it is possible to presume that the violation of the stay was deliberate if the creditor had actual notice of the automatic stay, see id., because the Section 362 stay automatically forbids all collection actions. A creditor who receives actual notice of the stay necessarily knows it applies to him, so it is fair to conclude that any actions to press claims despite the stay were willfully undertaken. See McMullen v. Sevigny (In re McMullen), 386 F.3d 320, 330 (1st Cir.2004); Rijos v. Banco Bilbao Vizcaya (In re Rijos), 263 B.R. 382, 392 (1st Cir. BAP 2001).

The same standard may also be applied to violations of clear and unambiguous discharge orders that leave no reasonable doubt as to what behavior is expected and who is expected to behave in the indicated way. See In re Perviz, 302 B.R. 357, 370 (Bankr. N.D. Ohio 2003); McDonald v. Norwest Fin., Inc. (In re McDonald), 265 B.R. 3, 9 (Bankr. D. Mass.2001); Worthing v. Connecticut Nat'l Bank (In re Worthing), 24 B.R. 774, 777 (Bankr. D. Conn.1982). But if it is not clear whether the debtor's discharge affected a particular debt or a particular creditor, actual knowledge simply of the existence of that order by itself may not be sufficient to presume a deliberate violation of the order.

The discharge order at issue here did not release Dunn from all debts; it released her from all dischargeable debts. Some reference to the possible exceptions to discharge under 11 U.S.C. § 523 was therefore invited as necessary to understand the actual scope of the injunction. The appellants took the position that Ellis's claim against Dunn had not been discharged based on facts particular to Dunn's case. Unlike notice of the universal automatic stay during the pendency of the bankruptcy proceedings, knowledge of the discharge injunction in this case did not necessarily advise these appellants of the scope of the injunction. It is certainly possible that the appellants knew, or reasonably should have known, that the discharge injunction applied to them but chose to look the other way. It is also possible that they held an objectively reasonable belief that, for reasons specific to Dunn's bankruptcy case, the injunction did not apply to Ellis's claim.

13

Ellis v. Dunn, 324 B.R. at 179-80.[5]

The district court concluded that the scope of the discharge was sufficiently ambiguous to preclude the entry of summary judgment with respect to liability because the debtor had failed to schedule the debt to the alleged creditor, Ellis, and allegedly had concealed assets. It determined that the "[s]ome reference to the possible exceptions to discharge under 11 U.S.C. § 523 was . . . invited as necessary to understand the actual scope of the injunction." Id. at 180. Thus, in Ellis v. Dunn, the court appears to have crafted an exception to the more liberal stay violation standard applicable to alleged violations of the discharge injunction formulated by the Eleventh Circuit in Hardy in those circumstances where the creditor did not receive timely notice of the discharge injunction or the discharge order left doubt as to who and what conduct was enjoined. Id.

2. Recoupment

The United States Court of Appeals for the First Circuit has had recent occasion to discuss the equitable doctrine of recoupment in the context of Medicare adjustments. In Slater Health Center, Inc. v. United States (In re Slater Health Center, Inc.), 398 F.3d 98, 103 (1st Cir. 2005), it stated:

The dispositive issue in this case is simply whether Medicare's adjustment

---

[5] In Perviz, the court stated: "When a violation of the discharge injunction of § 524(a) is at issue, a finding of contempt is appropriate when, under the identical standard as set forth in § 362(h), the creditor's actions are found to be 'willful.' Couched in the language of § 524, a 'willful' violation of the discharge injunction takes place 'if the creditor knew the discharge injunction was invoked and intended the actions which violated the discharge injunction.'" 302 B.R. at 370. The other decisions cited by the district court set forth that same standard.

14

to Slater's reimbursement claims for prior overpayments constituted an invalid setoff that contravened the bankruptcy code's automatic stay provision, 11 U.S.C. § 362(a)(7), or instead *a valid recoupment, which would not be affected by bankruptcy* but could simply be deducted from debts owed to Slater as a matter of course. *See* Holyoke, 372 F.3d at 3. A setoff is C's deduction from C's debt to B of an amount based on B's unrelated debt to C; a recoupment is C's deduction from C's debt to B based on B's debt to C arising out of the same transaction. *See, e.g.,* id. at 3-4; United Structures of Am., Inc., v. G.R.G. Eng'g, S.E., 9 F.3d 996, 998 (1st Cir.1993); *see also* Collier on Bankruptcy ¶ 553.10 (15th ed. rev. 2004).

The answer to this question is controlled by our recent decision in In re Holyoke Nursing Home, Inc. In that case we held, in conformity with the majority of other circuits to consider the question, that Medicare's adjustment for an overpayment constitutes a recoupment, not a setoff . . . .

398 F.3d at 103 (emphasis added).

Bankruptcy courts frequently consider recoupment in a variety of contexts. For example, in In re Jones, 289 B.R. 188 (Bankr. M.D. Fla. 2002), the court observed the following:

[W]hile the discharge prohibits a setoff of any debt as to the personal liability of a debtor, Section 524(a)(2) of the Code does not prohibit a recoupment. Moreover, the term "debt" is defined by 11 U.S.C. § 101(12) as a liability of a claim, which in turn is defined by 11 U.S.C. § 101(5), to mean a "right to payment." Recoupment is a defensive mechanism, which does not seek affirmative relief but merely seeks to defeat or reduce the claim by the entity who seeks recoupment.

298 B.R. at 191. The court added: "Recoupment is an equitable defense, which enables a defendant to reduce liability on a plaintiff's claim by asserting an obligation of the plaintiff, which arose out of the same transaction. Recoupment is only a challenge to the validity and extent of the plaintiff's claim, and no affirmative recovery is permitted." Id. at 192. *See also* Megafoods Stores, Inc. v. Flagstaff Realty Assocs. (In re Flagstaff Realty Assocs.), 60 F.3d

15

1031, 1035 (3d Cir. 1995)("A claim subject to recoupment avoids the usual bankruptcy channels and thus, in essence, is given priority over other creditors' claims."); <u>Malinowski v. N.Y. State Dep't of Labor (In re Malinowski)</u>, 156 F.3d 131, 133 (2d Cir. 1998)("Recoupment is an equitable defense, which enables a defendant to reduce liability on a plaintiff's claim by asserting an obligation of the plaintiff, which arose out of the same transaction. Recoupment is only a challenge to the validity and extent of the plaintiff's claim, and no affirmative recovery is permitted."); <u>United Structures of America, Inc. v. G.R.G. Eng'g</u>, 9 F.3d 996, 999 (1st Cir. 1993)(allowing creditor to recoup damages allows the debtor what it is due when viewing the transaction as a whole "because a debtor has, in a sense, no right to funds subject to recoupment"); <u>Brown v. General Motors Corp. (In re Brown)</u>, 152 B.R. 935, 938 (W.D. Wis. 1993). *But see* <u>Kings Terrace Nursing Home and Health Related Facility v. N.Y. State Dep't of Soc. Servs. (In re Kings Terrace Nursing Home and Health Related Facility)</u>, 184 B.R. 200, 203 (S.D. N.Y.1995); <u>Anthem Life Ins. Co. v. Izaguirre (In re Izaguirre)</u>, 166 B.R. 484, 492 (Bankr. N.D. Ga. 1994).

B. <u>Analysis</u>

Under the circumstances of this case the Court finds that there was no violation of the discharge order. Because this case has elements in common with <u>Ellis v. Dunn</u>, namely the lack of notice to the DTA of both the case commencement and the entry of the discharge, the Court must hold the Debtor to a higher standard than if the DTA had received notice of the entry of the discharge and a copy of the discharge order in accordance with Fed. R. Bankr. P. 4004(g). The pertinent facts are that the DTA did not

16

receive notice of the commencement of the case, notice of the meeting of creditors, notice of the deadlines for filing complaints under 11 U.S.C. §§ 523, 727, notice of the entry of the discharge order, or a copy of the discharge order. As in <u>Ellis v. Dunn</u>, and unlike the situation in <u>In re Byrd-Enoma</u>, the DTA was not listed as a creditor. Indeed, it did not determine it had overpaid food stamp benefits until after the commencement of the case. Thus, the <u>Byrd-Enoma</u> case is factually distinguishable from the instant case.

According to Attorney LePage, the DTA did not agree that its debt was dischargeable. Moreover, the DTA had recoupment rights against the Debtor, which may not have been available to it in the <u>Byrd-Enoma</u> case. The exercise of these rights, arguably, would not be barred by either the automatic stay or the entry of the discharge injunction. Although the Debtor attempts to distinguish contractual recoupment rights from those afforded the DTA through regulations set forth at 106 CMR 367.495, this is a distinction without a difference in view of the principles and purposes of the equitable doctrine of recoupment and the case law in this Circuit.

Under the circumstances of this case, the Court rejects the Debtor's argument that the DTA was required to monitor his case and determine when the discharge entered based upon receipt of notice in mid-January that the Debtor had filed a voluntary Chapter 7 petition or that the DTA had constructive notice of the entry of the discharge order which would preclude it from exercising its recoupment rights. While the standard applicable to violations of the automatic stay may pertain to most violations of the discharge injunction when the alleged contemnor is a listed creditor and receives notice of the discharge, that

standard cannot serve as a basis for civil contempt where the DTA was not listed as a creditor or served with the discharge order and at least arguably has recoupment rights for overpayments which would not diminish the bankruptcy estate. Notice of the bankruptcy case and constructive notice of the discharge order simply did not provide it with unambiguous notice that the discharge proscribed recoupment of the overpayment. In sum, the Debtor failed to establish that the DTA knew of the discharge order; that the order precluded it from exercising recoupment rights, and that it failed to comply with the Court's discharge order by sending the March 15, 2006 notice advising him that it intended to recoup the overpayment by a reduction in his food stamp benefits.

Additionally, in view of the DTA's representations that it would not seek to recoup the $294 overpayment following the intercession of Debtor's counsel, the equities, like the legal analysis set forth above, simply do not support the Debtor's position that the DTA should be found in contempt and subject to sanctions for mistakenly sending him a notice of its intention to exercise the right of recoupment.

**V. CONCLUSION**

In view of the foregoing, the Court shall enter an order denying the Debtor's Motion for Contempt.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: June 22, 2006
cc: Walter Oney, Esq., Neil P. Olson, Esq., Harold B. Murphy, Esq., Chapter 7 Trustee

18